PD-1681-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/29/2015 4:53:56 PM
Accepted 12/30/2015 12:06:02 PM
ABEL ACOSTA
CLERK

NO._____

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

---

**DAVID JOHN SMITH**
Petitioner

v.

**THE STATE OF TEXAS**
Respondent

---

Petition is in Cause No. F49384 from the
249th District Court of Johnson County, Texas,
and Cause No. 10-15-00181-CR in the
Court of Appeals for the Tenth District of Texas

---

**PETITION FOR DISCRETIONARY REVIEW**

---

Abe Factor
TBN: 06768500
Factor, Campbell & Collins
Attorneys at Law
5719 Airport Freeway
Phone: (817) 222-3333
Fax: (817) 222-3330
Email: lawfactor@yahoo.com
Attorney for Petitioner
David John Smith

FILED IN
COURT OF CRIMINAL APPEALS

December 30, 2015

ABEL ACOSTA, CLERK

# IDENTITY OF PARTIES AND COUNSEL

The following is a complete list of all parties to the trial court's final judgment, as well as the names and addresses of all trial and appellate counsel.

Trial Judge:                        Hon. D. Wayne Bridwell, presiding judge, 249th District Court of Johnson County

Appellant:                          David John Smith

Appellant's Trial Counsel:          Abe Factor
                                    TBN: 06768500
                                    Factor & Campbell
                                    Attorneys at Law
                                    5719 Airport Freeway
                                    Fort Worth, Texas 76117

                                    – and –

                                    Kimberly Knapp
                                    TBN: 24073455
                                    Kimberly Knapp Law Firm
                                    5719 Airport Freeway
                                    Fort Worth, Texas 76117

Appellant's Counsel
on Appeal:                          Abe Factor
                                    TBN: 06768500
                                    Factor & Campbell
                                    Attorneys at Law
                                    5719 Airport Freeway
                                    Fort Worth, Texas 76117

Appellee:                           The State of Texas

Appellee's Trial Counsel:           Matthew Boyle
                                    TBN: 24040556

Ryan Hill
TBN: 24058431
Johnson County District Attorneys
204 S. Buffalo
Cleburne, Texas 76033

Appellee's Counsel
on Appeal:

Dale Hanna
TBN: 24073230
David W. Vernon
TBN: 00785149
Johnson County District Attorney
204 S. Buffalo
Cleburne, Texas 76033

# TABLE OF CONTENTS

*page*

IDENTITY OF PARTIES AND COUNSEL.......................ii

TABLE OF CONTENTS...........................iv

INDEX OF AUTHORITIES..........................vi

STATEMENT REGARDING ORAL ARGUMENT.................1

STATEMENT OF THE CASE.........................1

STATEMENT OF PROCEDURAL HISTORY....................1

GROUNDS FOR REVIEW..........................2

REASONS FOR REVIEW..........................2

ARGUMENT..............................3

I.     The Court of Appeals erred when it held that the statements made by Petitioner's wife to the police at her home were not testimonial......................3

II.    The Court of Appeals erred when it held that the statements made by Petitioner's wife to the 9-1-1 operator were not testimonial......................3

    A.    *Facts*......................3

    B.    *Opinion Below*......................5

    C.    *Standard of Review*......................8

    D.    *Confrontation Clause Principles*......................8

    E.    *Landers v. State*......................6

  F.  *Combined Harm Analysis*. . . . . . . . . . . . . . . . . . . . . . . . . 14

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . .20

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

APPENDIX. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

# INDEX OF AUTHORITIES

*Cases*                                                                    *page*

*Brooks v. State,*
    132 S.W.3d 702 (Tex. App.-Dallas 2004, pet. ref'd)........2, 12

*Bullcoming v. New Mexico,*
    564 U.S.__, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011)...........9

*Chapman v. California,*
    386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)............16

*Crawford v. Washington,*
    541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)......*passim*

*Davis v. State,*
    203 S.W.3d 845 (Tex. Crim. App. 2006)...................15

*Davis v. Washington,*
    547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006)......*passim*

*De La Paz v. State,*
    273 S.W.3d 671 (Tex. Crim. App. 2008)...................8

*Dixon v. State,*
    244 S.W.3d 472 (Tex. App.-
    Houston [14th Dist.] 2007, pet. ref'd)................7

*Flores v. State,*
    170 722 (Tex. App.-Amarillo 2005, pet. ref'd)..............7

*Harris v. State,*
    790 S.W.2d 568 (Tex. Crim. App. 1989)..........15, 16, 17, 19

*Kearney v. State,*
    181 S.W.3d 438 (Tex. App.-Waco 2005, pet. ref'd)...........7

*Langham v. State,*
305 S.W.3d 568 (Tex. Crim. App. 2010). . . . . . . . . . . . . . . . *passim*

*Layton v. State,*
280 S.W.3d 235 (Tex. Crim. App. 2009). . . . . . . . . . . . . . . . . . .5

*Lilly v. Virginia,*
527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999). . . . . . . . . . 8

*Pollard v. State,*
392 S.W.3d 785 (Tex. App.–Waco 2012, pet. ref'd). . . . . . . . . .7-8

*Ruth v. State,*
167 S.W.3d 560 (Tex. App.–
Houston [14th Dist.] 2005, pet. ref'd). . . . . . . . . . . . . . . .6

*Scott v. State,*
227 S.W.3d 670 (Tex. Crim. App. 2007). . . . . . . . . . . . .15, 16, 18

*Smith v. State,*
10–15–00181–CR, 2015 WL 9256927 (Tex. App.–
Waco, Dec. 17, 2015, no. pet. h.)
(mem. op., not designated for publication). .*passim*

*Vinson v. State,*
252 S.W.3d 336 (Tex. Crim. App. 2008). . . . . . . . . . . . . . . *passim*

*Wall v. State,*
184 S.W.3d 730 (Tex. Crim. App. 2006). . . . . . . . . . . . . . . . .8, 9

*Wesbrook v. State,*
29 S.W.3d 103 (Tex. Crim. App. 2000). . . . . . . . . . . . . . . . . .16

**Constitutions**

U.S. CONST. amend. VI. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Statutes*

TEX. PENAL CODE ANN. § 49.04 (West Supp. 2015). . . . . . . . . . . . . .1, 14

TEX. PENAL CODE ANN. § 49.09(b)(2) (West Supp. 2015). . . . . . . . . . . . 1

***Court Rules***

TEX. R. APP. P. 44.2(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14, 16

## STATEMENT REGARDING ORAL ARGUMENT

Because Petitioner does not believe that oral argument will materially assist the Court in its evaluation of matters raised by this pleading, Petitioner respectfully waives oral argument.

## STATEMENT OF THE CASE

On March 31, 2015, David John Smith ("Mr. Smith" or "Petitioner") was indicted for the felony offense of driving while intoxicated, alleged to have occurred on September 23, 2014. [C.R. 10]; *see* TEX. PENAL CODE ANN. §§ 49.04, 49.09(b)(2) (West Supp. 2015). A trial to the jury was held in the 249th District Court of Johnson County before the Honorable D. Wayne Bridwell on May 12, 13, 14, 15, & 19, 2015. [II-VI: *passim*].

The jury found Mr. Smith guilty as charged in the indictment. [V R.R. 67]. Punishment was to the jury, which sentenced Mr. Smith to 12½ years incarceration in the Institutional Division of the Texas Department of Criminal Justice. [VI R.R. 192]. A timely Notice of Appeal was filed on May 19, 2015. [.R. 69].

## STATEMENT OF PROCEDURAL HISTORY

The Opinion by the Tenth Court of Appeals  affirming Mr. Smith's conviction was handed down on December 17, 2015. *Smith v.*

1

*State*, 10-15-00181-CR,2015 WL 9256927 (Tex. App.–Waco, Dec. 17, 2015, no. pet. h.) (mem. op., not designated for publication). This Petition for Discretionary review is therefore timely.

## GROUNDS FOR REVIEW

### GROUND FOR REVIEW ONE

I.     The Court of Appeals erred when it held that the statements made by Petitioner's wife to the police at her home were not testimonial.

### GROUND FOR REVIEW TWO

II.    The Court of Appeals erred when it held that the statements made by Petitioner's wife to the 9-1-1 operator were not testimonial.

## REASONS FOR REVIEW

1.     The Tenth Court of Appeals has decided an important question of state law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals and the United States Supreme Court. *See Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010); *Vinson v. State*, 252 S.W.3d 336, 339 (Tex. Crim. App. 2008); *see also Crawford v. Washington*, 541 U.S. 36, 59, 124 S.Ct. 1354, 1368–69, 158 L.Ed.2d 177 (2004).

2.     The decision by the Tenth Court of Appeals conflicts with another court of appeals' decision on the same issue. *See Brooks v. State*, 132 S.W.3d 702, 707 (Tex. App.-Dallas 2004, pet. ref'd).

2

## ARGUMENT

### GROUND FOR REVIEW ONE (Restated)

I.    The Court of Appeals erred when it held that the statements made by Petitioner's wife to the police at her home were not testimonial.

### GROUND FOR REVIEW TWO (Restated)

II.   The Court of Appeals erred when it held that the statements made by Petitioner's wife to the 9-1-1 operator were not testimonial.[1]

A.    *Facts*

On September 23, 2014, Mr. Smith's wife, Amanda Smith ("Amanda"), called 9-1-1 to report that her husband would not leave her alone and he was intoxicated.[2] [II R.R. 134]. Officers Tracy Fowler ("Officer Fowler") and Brandon Lyman ("Officer Lyman") of the City of Burleson Police Department were dispatched to the Smith's home in response to Amanda's call. [II R.R. 42-43, 144]. The officers arrived within five minutes of being dispatched to the Smith residence. [II R.R. 135]. When the officers arrived, they spoke with Amanda, who

---

[1] Due to the similarity of the arguments and applicable law, the discussion of Grounds for Review One and Two will be partially combined in the interest of brevity, the preservation of scarce judicial resources, and to avoid needless repetition.

[2] Amanda's 9-1-1 call was admitted as State's Exhibit 1 over Mr. Smith's confrontation objection. [II R.R. 17; VII R.R. St. Ex. 1].

3

appeared upset and agitated. [II R.R. 44].

During that conversation, Amanda stated to the officers that her husband was extremely intoxicated and that she couldn't believe that he had driven away.[3] [II R.R. 58-59]. About that time Mr. Smith passed by the house in his vehicle, a fact which Amanda made known to the officers. [II R.R. 59]. Each of the officers then went to their respective patrol vehicle and began to follow Mr. Smith. [II R.R. 60]. The officers activated their emergency lights, whereupon Mr. Smith pulled over. [II R.R. 66].

When Officer Fowler made contact with Mr. Smith, she noticed that his eyes were bloodshot and there was a very strong odor or alcoholic beverage about his person. [II R.R. 68-69]. During her conversation with Mr. Smith, he admitted to consuming "less than six" cans of Keystone Light beer.[4] [II R.R. 71]. Mr. Smith further admitted that he had begun drinking that day at approximately noon. [II R.R. 92; VII R.R St. Ex. 1, data file 344]. When Mr. Smith declined Officer

---

[3] The officers were aware prior to this conversation with Amanda that she had informed the dispatcher that she was "mentally ill." [II R.R. 109].

[4] During her inventory of Mr. Smith's vehicle after his arrest, Officer Fowler discovered four unopened sixteen ounce cans of Keystone Light beer. [II R.R. 73].

Lyman's request to submit the Standardized Field Sobriety Tests,[5] he was arrested for suspicion of driving while intoxicated.[6] [II R.R. 79]. Mr. Smith was then taken to the Burleson police station, where he was asked to provide a breath or blood sample by Officer Lyman, to which he refused.[7] [II R.R. 164]. Officer Lyman then obtained a warrant to seize Mr. Smith's blood. [II R.R. 70; VII R.R. St. Ex. 5]. Analysis of Mr. Smith's blood sample revealed that he had a blood alcohol level of .228. [III R.R. 181-82; IVV R.R. St. Ex. 19].

B.    *Opinion Below*

Pertinent to the matters raised in this Petition, the court of appeals held that in neither of the situations discussed were Amanda's statements testimonial in nature. *Smith*, 2015 WL 9256927 at *4. In its

---

[5] The Standardized Field Sobriety Tests ("SFSTs") consist of the Horizontal Gaze Nystagmus test ("HGN"); the walk-and-turn test; and the one-legged-stand test. [II R.R. 143, 158-59]; *Layton v. State*, 280 S.W.3d 235, 238 n.2 (Tex. Crim. App. 2009).

[6] The dashcam video recording from Officer Fowler's patrol car was admitted over partial objection as data file 344 from State's Exhibit 1. [II R.R. 88-89]. The video recording from the dashcam of Officer Lyman's patrol car was entered without objection as file number 381 2014092315438. [II R.R. 153; VII R.R. St. Ex. 1].

[7] The video recording from the interview of Mr. Smith conducted by Officer Lyman in the intoxilyzer room at the police station was admitted without objection as file number 381****609-1. [II R.R. 167; VII R.R. St. Ex. 1].

5

opinion, the Tenth Court of Appeals admitted that "[i]n analyzing whether statements are testimonial in nature, this Court has followed the Fourteenth Court of Appeals's reasoning in *Ruth v. State*." *Id.* at \*2 (citing *Ruth v. State*, 167 S.W.3d 560, 568–70 (Tex. App.–Houston [14th Dist.] 2005, pet. ref'd). The court of appeals has adopted the *Ruth* test for determining whether statements are testimonial as contemplated by *Crawford*. That test holds:

> (1) Testimonial statements are official and formal in nature.
> (2) Interaction with the police initiated by a witness or the victim is less likely to result in testimonial statement than if initiated by the police.
> (3) Spontaneous statements to the police are not testimonial.
> (4) Responses to preliminary questions by the police at the scene of a crime while police are assessing and securing the scene are not testimonial.

*Smith*, 2015 WL 9256927 at \*2 (citing *Ruth*, 167 S.W.3d at 568–69).

This Court has used different criteria, holding statements are testimonial if they are:

> (1) ex parte in-court testimony or its functional equivalent, i.e., pretrial statements that declarants would expect to be used prosecutorially;
> (2) extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, or prior testimony; and
> (3) statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

6

*Langham*, 305 S.W.3d at 576 (internal quotation marks omitted). This Court has also utilized a different set of factors in this analysis, amongst them being:

> 1) whether the situation was still in progress;
> 2) whether the questions sought to determine what is presently happening as opposed to what has happened in the past;
> 3) whether the primary purpose of the interrogation was to render aid rather than to memorialize a possible crime;
> 4) whether the questioning was conducted in a separate room, away from the alleged attacker; and
> 5) whether the events were deliberately recounted in a step-by-step fashion.

*Vinson*, 252 S.W.3d at 339 (citations omitted).

Other than the instant case, only five Texas cases have utilized the *Ruth* test to determine whether a statement is testimonial, and in only three has a Petition for Discretionary Review been filed, *Dixon v. State*, 244 S.W.3d 472, 482 (Tex. App.–Houston [14th Dist.] 2007, pet. ref'd), *Kearney v. State*, 181 S.W.3d 438, 442 (Tex. App.–Waco 2005, pet. ref'd), *Flores v. State*, 170 722, 724 (Tex. App.–Amarillo 2005, pet. ref'd); none of which are more recent than 2007.

In fact, other than a string citation to support the premise that "Whether a statement is testimonial is a question of law[,]" *Smith*, 2015 WL 9256927 at *1 (citing *Pollard v. State*, 392 S.W.3d 785, 792 (Tex.

7

App.–Waco 2012, pet. ref'd); *Langham*, 305 S.W.3d at 576; *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008)), in ruling that the two Amanda statements were not testimonial in nature, the court below did not cite to a case more recent than 2006. *Smith*, 2015 WL 9256927 at *4 (citing *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

*Crawford* was issued in 2004.[8] *Ruth* was issued the next year, in 2005. As argued below, the parameters of the confrontations rights invigorated by *Crawford* have most assuredly been more robustly interpreted by this Court and other courts in the decade since *Ruth* was issued.

## C. *Standard of Review*

A Texas appellate court must examine an alleged violation of the Confrontation Clause under a *de novo* standard of review. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006) (citing *Lilly v. Virginia*, 527 U.S. 116, 137, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999)).

## D. *Confrontation Clause Principles*

The Sixth Amendment's Confrontation Clause prohibits

---

[8] *Crawford v. Washington*, 541 U.S. 36, 59, 124 S.Ct. 1354, 1368–69, 158 L.Ed.2d 177 (2004).

introduction by the State of a testimonial hearsay statement unless (1) the declarant is unavailable to testify, and (2) the defendant had a prior opportunity to cross-examine the declarant. *Bullcoming v. New Mexico*, 564 U.S.___, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011). Although evidentiary rulings are usually reviewed for an abuse of discretion, a statement's testimonial nature is a question of law that an appellate court must review *de novo. Wall*, 184 S.W.3d at 742.

The threshold inquiry in applying this rule is whether the hearsay at issue is "testimonial." "Various formulations of th[e] core class of 'testimonial' statements exist...." *Crawford v. Washington*, 541 U.S. at 51, 124 S.Ct. 1354. The Supreme Court of the United States has not crafted an exclusive definition for classifying which types of statements are testimonial in nature. *Davis v. Washington*, 547 U.S. at 822, 126 S.Ct. 2266 (providing one standard "[w]ithout attempting to produce an exhaustive classification of all conceivable statements"). In *Crawford*, however, the Supreme Court held that the Confrontation Clause applies only to witnesses against the accused who "bear testimony," and testimony, in turn, is typically a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford*, 541 U.S. at 51.

9

This Court has summarized three kinds of testimonial statements: (1) "ex parte in-court testimony or its functional equivalent," i.e., "pretrial statements that declarants would expect to be used prosecutorially;" (2) "extrajudicial statements contained in formalized testimonial materials," such as affidavits, depositions, or prior testimony; and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Langham*, 305 S.W.3d at 576.

In *Vinson v. State*, this Court suggested a non-exhaustive list of factors to consider in determining whether the statements were testimonial:

> 1) whether the situation was still in progress; 2) whether the questions sought to determine what is presently happening as opposed to what has happened in the past; 3) whether the primary purpose of the interrogation was to render aid rather than to memorialize a possible crime; 4) whether the questioning was conducted in a separate room, away from the alleged attacker; and 5) whether the events were deliberately recounted in a step-by-step fashion.

252 S.W.3d at 339 (citing *Davis*, 547 U.S. at 829–30, 126 S.Ct. 2266).

10

E.    *Application*

1. **In person statements**

Here, the defense objected on confrontation and hearsay grounds to the admission of the statements made by Amanda to the police at her front door.[9] [II R.R. 47, 49-50, 55, 58-59, 144]. The statements were incriminatory, made in response to questions posed by the police, and any objective witness would reasonable believe the statements would be available for use later at trial. *Vinson*, 252 S.W.3d at 339.

This comports with the rationale used by the United States Supreme Court in *Crawford*, 541 U.S. at 61–62, 124 S.Ct. 1354, and *Davis*, 547 U.S. at 821–22, 126 S.Ct. 2266, 2273–74, to distinguish street-corner "nontestimonial" statements to law enforcement officers from litigation-oriented "testimonial" statements. Police interrogation statements relating to past events relevant to a criminal prosecution are "testimonial statements" for purposes of the Confrontation Clause, in part because of their adversarial nature and, in part, because the reasonable declarant would recognize that the statements could be

---

[9] This complaint fairly encompasses the recording of Amanda's hearsay statements made to the police as well as the officer's testimony recounting those statements. The Court admitted the recording over the confrontation and hearsay objections of the defense. [II R.R. 87-88; VII R.R. St. Ex. 1].

11

used in a future criminal prosecution. *See Davis*, 547 U.S. at 821–22, 126 S.Ct. at 2273–74 (holding that statements are testimonial when the circumstances objectively indicate that there is no ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."). The *Crawford* Court continued:

> even if the Sixth Amendment is not solely concerned with testimonial hearsay, that is its primary object, and interrogations by law enforcement officers fall squarely within that class.

*Crawford*, 541 U.S. at 53, 124 S.Ct. 1354. In a footnote, the Court added:

> We use the term 'interrogation' in its colloquial, rather than any technical legal, sense .... Just as various definitions of 'testimonial' exist, one can imagine various definitions of 'interrogation,' and we need not select among them in this case. [defendant's wife's] recorded statement, knowingly given in response to structured police questioning, qualifies under any conceivable definition.

*Id.* n. 4, 124 S.Ct. 1354. In compliance with the Court's holding, under Texas law, when the police are engaged in the competitive enterprise of detecting crime, investigating crime, and gathering evidence for criminal prosecution, statements gathered during their interrogations are testimonial "as a matter of law." *Brooks*, 132 S.W.3d at 707.

Moreover, the questions asked by the officers sought to determine what Mr. Smith had been doing in the past, ergo the primary

12

purpose of the interrogation was to memorialize a possible crime on the part of Mr. Smith. *Vinson*, 252 S.W.3d at 339 (citing *Davis*, 547 U.S. at 829–30, 126 S.Ct. 2266). The conversation between the officer and Amanda involved Mr. Smith's drinking; where he had gone; and, what vehicle he was operating. Finally, Mr. Smith was no longer on the scene and the questioning was therefore conducted away from Mr. Smith. *Id.* (citing *Davis*, 547 U.S. at 829–30, 126 S.Ct. 2266).

Because Amanda's statements were made to the police under conditions that would cause an objective witness to reasonably believe that the statements would be available for use at a later trial, they were testimonial. *Langham*, 305 S.W.3d at 576. Because Amanda did not testify at trial and Mr. Smith had no opportunity to cross examine her previously, the admission of her statements violated Mr. Smith's right to confront the witnesses against him. *Crawford*, at 61–62, 124 S.Ct. 1354; *see also* U.S. CONST. amend. VI.

### 2. Statements made in 9-1-1 call

Amanda stated directly in the 9-1-1 call that "her husband's was intoxicated" [II R.R. 134]; and, she referred to him as "her drunk husband" [II R.R. 137]. Thus, the statements made by Amanda in the 9-1-1 call played for the jury and also admitted over objection through

13

the testimony of the police dispatcher Wylene Landrum, substantially established one of the elements that the state was required to prove beyond a reasonable doubt.[10] [II R.R. 134, 137; VII R.R. St. Ex. 1]. Moreover, the dispatcher questioned Amanda regarding Mr. Smith's actions, location, and drinking. [II R.R. 134, 137].

### D. Combined Harm Analysis[11]

Error in admitting evidence in violation of the Confrontation Clause is constitutional error and, therefore, subject to a harm analysis under Rule 44.2(a) of the Texas Rules of Appellate Procedure. TEX. R. APP. P. 44.2(a); *Langham*, 305 S.W.3d at 582. Under Rule 44.2(a), a reviewing court must reverse a judgment of conviction unless it can be determined beyond a reasonable doubt that the error did not contribute to the conviction. TEX. R. APP. P. 44.2(a). The following factors are relevant to determining whether constitutional error under *Crawford* may be declared harmless beyond a reasonable doubt: (1) the importance of the out-of-court statement to the State's case; (2) whether

---

[10] The elements of the offense of driving while intoxicated are that the defendant (1) *was intoxicated* (2) while operating a motor vehicle (3) in a public place. TEX. PENAL CODE ANN. § 49.04(a) (emphasis added).

[11] Due to the similarity of the arguments and applicable law, the harm analysis discussion of the in person and 9-1-1 call statements will be consolidated.

14

the statement was cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the statement on material points; and (4) the overall strength of the State's case. *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007); *Davis v. State*, 203 S.W.3d 845, 852 (Tex. Crim. App. 2006).

The emphasis of a harm analysis under Rule 44.2(a) is not on "the propriety of the outcome of the trial." *Scott*, 227 S.W.3d at 690 (citing *Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989)). That is to say, the question for the reviewing court is not whether the jury verdict was supported by the evidence. *Scott*, 227 S.W.3d at 690 (citing *Harris*, 790 S.W.2d at 587). Instead, the question is the likelihood that the constitutional error was actually a contributing factor in the jury's deliberations in arriving at that verdict—whether, in other words, the error adversely affected "the integrity of the process leading to the conviction." *Scott*, 227 S.W.3d at 690 (citing *Harris*, 790 S.W.2d at 587). In reaching that decision, the reviewing court may also consider, in addition to the factors listed above, *inter alia*, the source and nature of the error, to what extent, if any, it was emphasized by the State, and how weighty the jury may have found the erroneously admitted evidence to be compared to the balance of the evidence with respect to

the element or defensive issue to which it is relevant. *Scott*, 227 S.W.3d at 690 (citing *Harris*, 790 S.W.2d at 587).

With these considerations in mind, the reviewing court must ask itself whether there is a reasonable possibility that the *Crawford* error moved the jury from a state --of non-persuasion to one of persuasion on a particular issue. *Davis v. State*, 203 S.W.3d at 852–53 (quoting *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000)). Ultimately, after considering these various factors, the reviewing court must be able to declare itself satisfied, to a level of confidence beyond a reasonable doubt, "that the error did not contribute to the conviction" before it can affirm it. *Scott*, 227 S.W.2d at 691 (citing TEX. R. APP. PROC. 44.2(a); *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Here, the source of the error was the state, as the complained-of evidence–Amanda's 9-1-1 statements and the statements made to the police at her home presented via officer testimony and recording–were proffered by the state. *Scott*, 227 S.W.3d at 690; *Harris*, 790 S.W.2d at 587. The nature of the errors was the devastatingly incriminating statement from Mr. Smith's wife that he was drunk–coming from the person who knew him intimately on a day to day basis. *Scott*, 227

16

S.W.3d at 690; *Harris*, 790 S.W.2d at 587. Moreover, the state repeatedly emphasized the erroneously-admitted evidence. The prosecutor made numerous references to Amanda's statements, in fact, he led off with it in his opening statement: "...there's a 9-1-1 call by Amanda Smith, where she calls 9-1-1 and states that she has an intoxicated husband. . . ." [II R.R. 31]; during the examination of Officer Lyman to provide the basis to detain Mr. Smith: "[d]id you believed you had reasonable suspicion to pull the Defendant over for driving while intoxicated based on the statements his wife said that he was intoxicated?" [II R.R. 210-11]; "[s]o you based your reasonableness of the suspicion on what his wife said, that he was intoxicated, correct?" [II R.R. 213]; three times in closing argument as proof of the intoxication element: 1) "...Defendant knew he was intoxicated ... [and] ... his wife knew it." [V R.R. 23]; 2)

> So let's get to the evidence that does show that he's intoxicated in this case .... in the video, they go up and they talk to, again, the Defendant's wife, who knows him, you know. I'm tired of his drunkenness. It's killing me. That's what she tells the officer, that he's intoxicated. That's all I know. And then she says, I cannot believe he drove off three times.

[V R.R. 21-22]; and, 3) " ... that is consistent with the person who knows him best, his wife, who said he was drunk." [V R.R. 28].

17

Additionally, the state emphasized Amanda's statements when Officer Lyman informed the jury that he made the decision to arrest Mr. Smith *inter alia* because of [Amanda's] statements. [II R.R. 160].

Finally, the jury would have placed great weight on the erroneously admitted evidence from Mr. Smith's wife. This is because a viewing of the various videos depicting Mr. Smith immediately prior to, during, and after his arrest fail to show that he has lost the normal use of his mental or physical faculties. [VII R.R. St. Ex. 1]. Another factor lending greater weight to Amanda's statements in the eyes of the jury is the questionable reliability of the blood test results. The reliability of the blood test results was greatly discounted by the evidence presented which demonstrated that the proper procedures weren't followed, and that the results themselves contained anomalies–primarily the acetone and methanol irregularities but including the test tube sterilization protocol–which fairly called into question whether the results were accurate. [IV R.R. 70-71, 72, 120-21]. With substantial and reasonable doubts regarding the blood test results and the lack of intoxication evidence to be found on the various video recordings entered into evidence, the jury would have necessarily place great emphasis on Amanda's statements. *Scott*, 227 S.W.3d at 690;

18

*Harris,* 790 S.W.2d at 587.

Because it cannot be found beyond a reasonable doubt that the erroneous admission of Amanda's 9-1-1 and in person statements did not contribute to Mr. Smith's conviction, this Court should reverse the conviction and sentence entered below and remand for new trial.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Petitioner respectfully prays that this Court grant discretionary review and allow each party to fully brief and argue the issues before the Court of Criminal Appeals, and that upon reviewing the judgment entered below, that this Court vacate the opinion of the Tenth Court of Appeals and remand for full consideration of Petitioner's complaints on appeal.

Respectfully submitted,

/s/ Abe Factor
Abe Factor
TBN: 06768500
Factor, Campbell & Collins
Attorneys at Law
5719 Airport Freeway
Fort Worth, Texas 76117
Phone: (817) 222-3333
Fax: (817) 222-3330
Email: lawfactor@yahoo.com
Attorney for Petitioner
David John Smith

## CERTIFICATE OF COMPLIANCE

I hereby certify that the word count for the portion of this filing covered by Rule 9.4(i)(1) of the Texas Rules of Appellate Procedure is 4,154.

/s/Abe Factor
Abe Factor

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been furnished to counsel for the State's Prosecuting Attorney and the Johnson County District Attorney by a manner compliant with the Texas Rules of Appellate Procedure, on this 29th day of December, 2015.

/s/Abe Factor
Abe Factor

# APPENDIX

1.  Opinion of the Tenth Court of Appeals, December 17, 2015



# IN THE
# TENTH COURT OF APPEALS

No. 10-15-00181-CR

DAVID JOHN SMITH,

                                                            Appellant

v.

THE STATE OF TEXAS,

                                                            Appellee

From the 249th District Court
Johnson County, Texas
Trial Court No. F49384

## MEMORANDUM OPINION

In three issues, appellant, David John Smith, challenges his conviction for the felony offense of driving while intoxicated. *See* TEX. PENAL CODE ANN. §§ 49.04, 49.09(b) (West Supp. 2015). Specifically, appellant contends that the trial court: (1) violated his right to confrontation when it admitted hearsay statements made by appellant's wife to police at the couple's house and in a 911 call; and (2) erred in admitting hearsay statements made by appellant's wife to police. Because we overrule all of appellant's issues on appeal, we affirm.

## I. APPELLANT'S RIGHT OF CONFRONTATION

In his first and second issues, appellant argues that the trial court violated his right to confrontation when it admitted statements made by appellant's wife to police during a 911 call and at the couple's house. We disagree.

### A. Applicable Law

With regard to statements made during a 911 call, this Court has stated that we review de novo the trial court's ruling that the admission of the 911 call did not violate appellant's rights under the Confrontation Clause. *Kearney v. State*, 181 S.W.3d 438, 441 (Tex. App.—Waco 2005, pet. ref'd) (citing *McClenton v. State*, 167 S.W.3d 86, 93 (Tex. App.—Waco 2005, no pet.)).

> The Sixth Amendment to the United States Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him." U.S. CONST. amend. VI. The Confrontation Clause's central concern is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversarial proceeding before the trier of fact. *Lilly v. Virginia*, 527 U.S. 116, 124-24, 119 S. Ct. 1887, 1894, 144 L. Ed. 2d 117 (1999). The United States Supreme Court recently held that "testimonial statements" of witnesses absent from trial are admissible over a Sixth Amendment Confrontation Clause objection only when the declarant is unavailable and only where the defendant has had a prior opportunity to cross-examine. *Crawford v. Washington*, 541 U.S. 36, 59, 124 S. Ct. 1354, 1368-69, 158 L. Ed. 2d 177 (2004).

*Id.* at 441-42.

The threshold inquiry in a *Crawford* analysis is whether the statements were testimonial. *Spencer v. State*, 162 S.W.3d 877, 879 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). "Whether a statement is testimonial is a question of law." *Pollard v. State*, 392 S.W.3d 785, 792 (Tex. App.—Waco 2012, pet. ref'd) (citing *Langham v. State*, 305 S.W.3d

568, 576 (Tex. Crim. App. 2010); *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008)). The *Crawford* Court did not define "testimonial," but it did describe three categories of testimonial evidence: (1) "ex parte in-court testimony or its functional equivalent," such as affidavits, custodial examinations, prior testimony not subject to cross-examination, or "similar pretrial statements that declarants would reasonably expect to be used prosecutorially," (2) "extrajudicial statements" of the same nature "contained in formalized testimonial materials," and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 51-52, 124 S. Ct. at 1364. The *Crawford* Court further explained that the term "testimonial" applies "at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a formal trial; and to police interrogations." *Id.* at 68, 124 S. Ct. at 1374.

In analyzing whether statements are testimonial in nature, this Court has followed the Fourteenth Court of Appeals's reasoning in *Ruth v. State*. 167 S.W.3d 560, 568-70 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). *See Kearney*, 181 S.W.3d at 442-43. In *Ruth*, the Court considered the following criteria to determine whether a statement is testimonial:

(1) Testimonial statements are official and formal in nature.

(2) Interaction with the police initiated by a witness or the victim is less likely to result in testimonial statement than if initiated by the police.

(3) Spontaneous statements to the police are not testimonial.

(4) Responses to preliminary questions by the police at the scene of a crime while police are assessing and securing the scene are not testimonial.

167 S.W.3d at 568-69. The *Ruth* Court concluded that statements to the police—whether spontaneous or in response to preliminary questions—when police are called to a crime scene shortly after a crime are not testimonial because the interaction was not initiated by police, nor was the interaction formal or structured. *Id.* at 569 (citing *Spencer*, 162 S.W.3d at 882-83). Later, the *Ruth* Court mentioned:

> [S]tatements made during 911 calls are similar in nature to the situation we addressed in *Spencer*. Such statements are not given in response to structured police questioning or with an eye to [] future legal proceedings but are initiated by a victim or witness to obtain police assistance. *See People v. Corella*, 122 Cal. App. 4th 461, 18 Cal. Rptr. 3d 770, 776 (Ct. App. 2004); *People v. Moscat*, 3 Misc. 3d 739, 777 N.Y.S.2d 875, 879-80 (Crim. Ct. 2004); *State v. Davis*, 154 Wn.2d 291, 111 P.3d 844, 849 (Wash. 2005). They usually do not bear any of the official, formal qualities of the police interactions the Confrontation Clause was intended to protect against. *See Corella*, 18 Cal. Rptr. 3d at 776; *Moscat*, 777 N.Y.S.2d at 879-80; *Davis*, 111 P.3d at 850-51. Some courts have held that statements made during 911 calls should be analyzed on a case-by-case basis because some statements could be testimonial under certain circumstances. *See People v. West*, 355 Ill. App. 3d 28, 823 N.E.2d 82, 91, 291 Ill. Dec. 72 (Ill. App. Ct. 2005) (holding that 911 calls should be analyzed on a case-by-case basis to determine whether the statements at issue were volunteered to obtain police action or the result of interrogation to gather evidence for use in criminal prosecution); *People v. Mackey*, 5 Misc. 3d 709, 785 N.Y.S.2d 870, 872 (Crim. Ct. 2004) (noting that "various courts have begun to adopt a fact-specific analysis of the particular call and the caller's motive for making the call" in conducting *Crawford* analyses); *Davis*, 111 P.3d at 850 ("In most cases, one who calls 911 for emergency help is not 'bearing witness,' whereas calls made to the police simply to report a crime may conceivably be considered testimonial. It is necessary to look at the circumstances of the 911 call in each case to determine whether the declarant knowingly provided the functional equivalent of testimony to a government agent."). *But see People v. Cortes*, 4 Misc. 575, 781 N.Y.S.2d 401, 415 (Sup. Ct. 2004) (categorically concluding that "calls to 911 to report a crime are testimonial under [*Crawford*]").

*Id.*

**B.    Facts**

Wylene Landrum, a police communications officer for the City of Burleson, stated that she took a 911 call from appellant's wife, Amanda, on the day in question. Landrum described the call as follows:

> The original call—the call came in as the wife was upset because her husband—she, clearly, was very upset because she said that[s] he's got mental issues, she's tired, she needs sleep, her husband's intoxicated and he won't leave her alone.
>
> At that point, I could hear him a little bit. I couldn't hear him, but I could hear her saying, "Leave me alone, leave me alone."
>
> I went ahead and dispatched the officers out there fairly quickly for the officers to be on the way, and I stayed on the phone with her the whole time.
>
> I have asked her if he was still there. And at the time, he was still there. She believed he was still there the whole time. I asked her where he was at, and she said that he went out to the car. And when I asked her wherever the car was, she said it was in the garage. I did ask her also, you know, I believe, you know, did she think he would leave. And she didn't believe he would leave.

Thereafter, over appellant's objection, the trial court admitted the tape-recorded version of the 911 call.

Officer Tracy Fowler of the Burleson Police Department testified that she responded to a disturbance at appellant's house. Upon arriving, Officer Fowler spoke with Amanda. Officer Fowler described Amanda's demeanor as very upset and agitated. Officer Fowler soon discovered that appellant was not at the house and that his blue Nissan truck was not in the garage. Officer Fowler worried that appellant "wasn't on

scene and I had been advised he had been drinking and left in his vehicle," which constituted an ongoing public-safety issue. Over appellant's objection, Officer Fowler noted that Amanda stated that appellant "was extremely intoxicated" and that she could not believe he had left. At some point during the conversation, Amanda noticed a blue Nissan truck driving by, which she identified as appellant's. Officer Fowler observed the truck and ran to her patrol car so that she could follow the truck. Eventually, Officer Fowler initiated a traffic stop.

Upon stopping his truck, appellant opened the driver-side door, took the keys out of the ignition, and stepped out—actions Officer Fowler deemed to be odd, especially given that appellant had not been ordered to exit the vehicle. In any event, when appellant stepped out of the truck, Officer Fowler noticed that appellant "was very off balance"; that his eyes "were very blood shot"; and that he had a "very strong odor of alcohol." She also saw four unopened, cold, sixteen-ounce Keystone Light beer cans in the seat next to where appellant was sitting. When speaking with Officer Fowler, appellant's speech was "lethargic and slow rather than slurred." Appellant acknowledged that he left the house because Amanda had feared for her safety, and because he was afraid Amanda had called the police. Appellant later admitted to having consumed "less than six Keystone light" between noon and 3:00 p.m. on the day in question.[1] Appellant also agreed that "it was not a good idea to be driving because .08

---

[1] The record reflects that Officers Fowler and Brandon Lyman arrived at appellant's house at approximately 3:40 p.m. on September 23, 2014.

was a very small amount." Appellant refused to participate in field sobriety tests and was subsequently placed under arrest for suspicion of driving while intoxicated.

Later, after receiving DIC-24 warnings at the Burleson Police Department, appellant refused to provide either a breath or blood sample. In response, officers obtained a warrant for appellant's blood and transported him to Texas Health Resources in Burleson where two vials of blood were taken by a registered nurse. Subsequent testing revealed that appellant's average blood-alcohol level was 0.228.

## C. Discussion

Based on our review of the record, we cannot say that the statements made by Amanda in either instance were given in response to structured police questioning or with an eye to future legal proceedings. In fact, the statements made by Amanda during the 911 call were initiated by Amanda to obtain police assistance. Moreover, the questions asked by Landrum during the 911 call were designed to further evaluate the situation to determine if an emergency existed and whether Amanda was at risk of harm as a result of appellant's actions. This Court and many others have held that such statements are not testimonial and do not implicate a defendant's right of confrontation. See Kearney, 181 S.W.3d at 443; see also Crawford, 541 U.S. at 51-52, 124 S. Ct. at 1364; Ruth, 167 S.W.3d at 568-70; Spencer, 162 S.W.3d at 879.

Additionally, we believe that the record demonstrates that Amanda's statements at the couple's house were made in response to preliminary questions by police at the scene of the crime while they were assessing and securing the scene. See Kearney, 181 S.W.3d at 442; see also Ruth, 167 S.W.3d 568-69. Indeed, when Amanda spoke with police

at the couple's house, appellant had fled and officers were attempting to discover his whereabouts to minimize the impact of his suspected drunk driving. *See Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006) ("Statements are non[-]testimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."). We therefore conclude that the statements made by Amanda at the couple's house are also non-testimonial and do not implicate appellant's right of confrontation. *See Kearney*, 181 S.W.3d at 442; *see also Ruth*, 167 S.W.3d 568-69.

Accordingly, we cannot conclude that the trial court abused its discretion in admitting the complained-of evidence over appellant's objection under the Confrontation Clause of the United States Constitution. *See McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005) ("In determining whether a trial court erred in admitting evidence, the standard of review is abuse of discretion. A trial court abuses its discretion when its decision is so clearly wrong as to lie outside that zone which reasonable persons might disagree."). We overrule appellant's first and second issues.

## II. AMANDA'S STATEMENT THAT APPELLANT WAS DRUNK

In his third issue, appellant asserts that the trial court erred in admitting statements made by Amanda to police while at the couple's house because the statements

contained inadmissible hearsay. Appellant specifically complains about Amanda's statement that he was drunk.

At trial, appellant objected to Amanda's statement that he was drunk, arguing that the statement is hearsay. The State responded with several hearsay exceptions, including the present-sense impression and excited-utterance exceptions. The trial court overruled appellant's objection and admitted Amanda's statement into evidence.

Assuming without deciding that the statement is hearsay, as the proponent of the evidence, the State had the burden to establish that a hearsay exception applied. *Taylor v. State*, 268 S.W.3d 571, 578-79 (Tex. Crim. App. 2008). Under Texas Rule of Evidence 803(1), present-sense impressions are not excluded by the hearsay rule. *See* TEX. R. EVID. 803(1). The Rule defines a present-sense impression as "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." *Id.* A statement that meets this definition is admissible under the rationale that, because of the contemporaneous nature under which it is made, the statement is free from the defects of memory and is unclouded by the potential deception of a calculated misstatement. *Rabbani v. State*, 847 S.W.2d 555, 560 (Tex. Crim. App. 1992); *Freeman v. State*, 230 S.W.3d 392, 401 (Tex. App.—Eastland 2007, pet. ref'd). "If the declarant has had time to reflect upon the event and the conditions he observed, this lack of contemporaneity diminishes the reliability of the statements and renders them inadmissible under the rule." *Fischer v. State*, 252 S.W.3d 375, 381 (Tex. Crim. App. 2008).

Landrum testified that Amanda stated during the 911 call that appellant was intoxicated. The record reflects that five minutes after making the 911 call Officer Fowler arrived at the scene. Amanda once again stated that she perceived appellant to be drunk. Given that only five minutes transpired between the 911 call and Officer Fowler arriving at the scene, we do not believe that the unreflective nature of a present-sense impression was destroyed. *See* TEX. R. EVID. 803(1); *see also Fischer*, 252 S.W.3d at 381; *Rabbani*, 847 S.W.2d at 560; *Freeman*, 230 S.W.3d at 401.

However, to the extent that it can be argued that the five-minute lapse in time does not satisfy the contemporaneity element, we also believe that the statement was admissible as an excited utterance. The excited utterance hearsay exception provides that the following statements are not excluded by the hearsay rule: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." TEX. R. EVID. 803(2). Similar to the exception for present-sense impressions, the rationale for the admissibility of an excited utterance is that the circumstances under which it is made "eliminate the possibility of fabrication, coaching, or confabulation, and that therefore the circumstances surrounding the making of the statement provide sufficient assurance that the statement is trustworthy and that cross-examination would be superfluous." *Idaho v. Wright*, 497 U.S. 802, 820, 110 S. Ct. 3139, 111 L. Ed. 2d 638 (1990). However, unlike the determination concerning an alleged present-sense impression, which focuses on the contemporaneity of the statement, the analysis of an alleged excited utterance is focused on the spontaneity of the statement. *McCarty v. State*, 257 S.W.3d 238, 239-40 (Tex. Crim. App. 2008). We must "determine

whether the statement was made 'under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection.'" *Zuliani v. State*, 97 S.W.3d 589, 596 (Tex. Crim. App. 2003) (quoting *McFarland v. State*, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992)).

Here, Landrum testified that Amanda was very upset and agitated at appellant's actions and behavior. Officer Fowler, who observed Amanda five minutes later, also described Amanda as very upset and agitated. Additionally, the record indicates that one of the reasons Amanda called 911 was to get appellant to leave her alone. Given that only five minutes elapsed between the 911 call and Officer Fowler arriving at the scene and that both Landrum and Officer Fowler described Amanda as very upset and agitated, we conclude that Amanda's statement that appellant was drunk could also fall within the excited-utterance exception to the hearsay rule. *See* TEX. R. EVID. 803(2); *see also Wright*, 497 U.S. at 820, 110 S. Ct. at 3139; *McCarty*, 257 S.W.3d at 239-40.

Based on the foregoing, we cannot say that the trial court abused its discretion by admitting the complained-of statement under either the present-sense-impression or excited-utterance exceptions to the hearsay rule. *See* TEX. R. EVID. 803(1); *McCarty*, 257 S.W.3d at 239-40; *Fischer*, 252 S.W.3d at 381; *Rabbani*, 847 S.W.2d at 560; *Freeman*, 230 S.W.3d at 401; *see also McDonald*, 179 S.W.3d at 576. We overrule appellant's third issue.

### III.   CONCLUSION

We affirm the judgment of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed December 17, 2015
Do not publish
[CR25]

